# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

SAMI AL-SHAHIN,

                  Plaintiff,

    v.

                              Civil Action No. 06-5261 (KSH)

U.S. DEPARTMENT OF
HOMELAND SECURITY,
et al.,

                               **OPINION**

            Defendant

**KATHARINE S. HAYDEN, U.S.D.J.**

Plaintiff, Sami Al-Shahin ("Al-Shahin"), residing at 439 Castle Hill Avenue in Bronx, New York, seeks to bring this action in forma pauperis pursuant to 28 U.S.C. § 1915, alleging violations of his constitutional rights. Plaintiff initially submitted his complaint without paying the filing fee or submitting a complete application to proceed in forma pauperis s ("IFP"). On November 16, 2006, this Court issued an order denying Al-Shahin's IFP application without prejudice, and administratively terminating the action. The order also gave plaintiff thirty (30) days to submit a complete IFP application with an affidavit of indigency if he wished to re-open his case.

On December 6, 2006, the Court received Al-Shahin's application to proceed in forma pauperis and a letter requesting that his action be reopened accordingly. It appearing that plaintiff qualifies to proceed in forma pauperis, the Court will grant plaintiff's application to

proceed as an indigent and will direct the Clerk of the Court to reopen this matter, and file the complaint without prepayment of fees.

Having reviewed the complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief, the Court concludes that this action should proceed in part.

## I.  BACKGROUND

It appears that Al-Shahin is an alien subject to a deportation order.  He brings this action asserting violations of his constitutional rights while he was being held in detention at the Passaic County Jail pending deportation.  The named defendants are: the United States Department of Homeland Security ("DHS"); the Bureau of Immigration and Customs Enforcement ("BICE"); Edward J. McElroy, BICE District Director; Greg Kendrick, BICE Field Office Director; John P. Carbone, BICE Field Office Director; Wanda Royall, BICE Assistant Chief; Mark Stokes, BICE Assistant Chief; BICE Deportation Officer Thames; T. Boyce, BICE Assistant Chief; Jerry Speziale, Passaic County Sheriff; Charles Meyer, Warden of the Passaic County Jail; Brian F. Bendl, Deputy Warden of the Passaic County Jail; Captain Vassolar, Commander Captain at the Passaic County Jail; and Sgt. Condatore at Passaic County Jail. (Compl. Caption, ¶¶ 4-17.)  The following factual allegations are taken from the complaint and are accepted as true for purposes of this review.1  On December 15, 2004, Al-Shahin was detained by BICE agents and placed in

---

1  The Court notes that this complaint appears to be a copied format from another complaint filed by another plaintiff, Juan Manuel Gonzalez-Cifuentes, who had been detained at the Bergen County Jail.  See Complaint at ¶ 3.  Plaintiff Al-Shahin apparently forgot to change paragraph 3 to reflect his name as  the plaintiff in this matter.  The remainder of the Complaint

the Passaic County Jail ("PCJ").  BICE had a contract with the Sheriff of Passaic County to house immigration detainees at the county jail.  DHS and BICE define these county jails as "Contract Detention Facilities" ("CDF").  The DHS had a "Detention Operations Manual" ("Manual"), which set forth the standards for detention of immigration detainees.  The Manual allegedly provides that detainees are to be paid one dollar per day while detained.  (Compl. ¶¶ 20-23.)  Al-Shahin submits that the Passaic Jail Handbook he received upon admission to Passaic County Jail ("PCJ") conflicts with the DHS Manual.  (Compl. ¶ 25.)

Upon admission to PCJ, Al-Shahin was issued a green uniform, a pair of Chinese sandals, and a small bag of hygiene products.  He was not given any t-shirts, underwear, socks, pillow, shampoo, or skin lotion, as required by the Manual.  Al-Shahin further complains that the conditions of his confinement at PCJ violated his constitutional rights.  He was housed in a dormitory on the second floor of PCJ with about 60 other detainees.  The dormitory consisted of three-tier bunk beds jammed together.  There was limited space to walk back and forth, and new detainees often had to sleep on the floor until a bed became available.  The detainees were fed in the dormitory, which had only three tables accommodating 30 detainees.  Many detainees had to eat on their beds.  Moreover, the tables were placed next to the urinals, toilets, and other unsanitary conditions. (Compl. ¶¶ 26-34.)  The detainees in the dormitory were given watered bleach to clean their toilets.  They did not have sufficient cleaning agents and tools to clean their floors and adequately disinfect the toilets and urinal.  There was only one urinal and three toilets for the dormitory.  The dormitory ceiling had several leaks, and plaster and water often fell on the

---

does not refer to Mr. Gonzalez-Cifuentes.  Therefore, the Court will presume that ¶ 3 is in error, and should be construed as asserting Al-Shahin as the plaintiff in this matter.

bunks.  The dormitory also lacked proper ventilation, and was infested with roaches and vermin. (Compl. ¶¶ 39-45.)

Al-Shahin had complained about these conditions to the BICE personnel visiting the dormitory, but no remedial action was taken until a conjunctivitis epidemic occurred infecting plaintiff and about 50 other detainees.  (Compl. ¶¶ 46-48.)

Al-Shahin also complains that he did not receive dental care.  (Compl. ¶ 38.)  In particular, he alleges that he was denied dental treatment for bleeding gums and a loose tooth (incurred during an attack by another detainee).  (Compl. ¶¶ 75-76.)

Plaintiff further states that the detainees were subjected to illegal searches of their cells and dormitory with attack dogs.  Al-Shahin alleges that most searches are conducted without justification or probable cause, and are used to punish all detainees for the infraction of one. Further, the detainees are threatened with physical harm, verbal abuse and humiliation during these searches.  (Compl. ¶¶ 35-37.)

Al-Shahin also complains that the law library at Passaic County Jail was inadequate.  It did not have the books and materials required by the Manual.  The library had only five computers for legal research, but certain forms, statutes and tort procedure were accessible only by passwords that were not available to the detainees.  (Compl. ¶¶ 49, 50.)

Next, Al-Shahin alleges that he fell from his top bunk on January 2, 2005 and had to go to the infirmary for medical treatment.  He made a request for a bottom bunk, which was denied. Consequently, plaintiff slept on the floor until a bottom bunk became available.  (Compl. ¶¶ 51-52.)

On May 7, 2005, Al-Shahin states that he was assaulted by another detainee, Bojovic Poljoka.  Plaintiff alleges that Poljoka admitted to other detainees that he was authorized by Sgt. Condator to attack plaintiff.  Al-Shahin suffered damages to his mouth (bleeding gum and loose tooth), which he alleges is permanent.  (Compl. ¶¶ 53-55, 75.)

Al-Shahin filed a grievance regarding the incident with Poljoka, and requested to press charges against him.  On May 9, 2005, defendant Deputy Warden Bendl told plaintiff that he would arrange to have an assault complaint filed at Paterson Municipal Court.  No arrangements were ever made.  (Compl. ¶¶ 56-57.)  Also on May 9, 2005, while plaintiff was waiting in the medical ward, Poljoka attempted to attack plaintiff again.  Other detainees, and not the staff at Passaic County Jail, prevented the attack.  Al-Shahin alleges that he was supposed to have an institutional separation from Poljoka.  (Compl. ¶¶ 58-59.)

Consequently, Al-Shahin filed another grievance on May 9, 2005, asking that Poljoka be separated from plaintiff and seeking a response to his request that a complaint be filed against Poljoka.  Bendl assured plaintiff that a separation status had been filed, but denied Al-Shahin's request to file charges against Poljoka in municipal court.  (Compl., ¶¶ 60-63.)  Al-Shahin also filed a grievance with the BICE, complaining about his treatment and the conditions at Passaic County Jail, and asking that he be transferred to another facility.  The BICE never responded to plaintiff's grievance.  (Compl. ¶¶ 64-65.)

On September 14, 2005, Poljoka was placed in the same housing unit with Al-Shahin and assigned to a neighboring bunk.  The next day, on September 15, 2005, Poljoka attacked plaintiff again.  Al-Shahin complains that he received improper medical treatment and continues to suffer from neck, back and shoulder pain since the attack.  He filed another grievance complaining that

he was assaulted repeatedly by the same detainee.  On September 21, 2005, an institutional detective accused Al-Shahin of making false statements about being housed in the same unit as Poljoka. On September 30, 2005, plaintiff was summoned to a meeting with the tour commander in the conference room.  Also in attendance were Captain Vassolar, Sgt. Condatore, and two representatives from BICE (including L.T.M. Boyce).  Al-Shahin alleges that he was bullied and verbally harassed by these officers to change the facts regarding the attacks by Poljoka.  (Compl. ¶¶ 66-71, 77.)

Al-Shahin also alleges that he was repeatedly victimized by the staff at Passaic County Jail.  On August 9, 2005, plaintiff was only given five minutes for a visit, which is usually an hour.  On August 21, 2005, an officer threw plaintiff's Holy Quran on the floor during an institutional search.  During Ramadan, plaintiff's name was taken off the list for Halal meals. Plaintiff went on a hunger strike for ten days to protest the conditions and treatment at Passaic County Jail.  During this time, Sgt. Condatore used physical violence to force plaintiff to break his hunger strike.  (Compl. ¶¶ 72-74.)

Al-Shahin asserts that his conditions of his confinement, such as the overcrowding and unsanitary conditions, the lack of medical and dental care, and failure to provide personal hygiene items, and the illegal searches, verbal abuse, and threats of physical harm violated his rights under the Fourth, Fifth, and Fourteenth Amendments.  He seeks both punitive and compensatory damages in excess of $4 million.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

Where the plaintiff is proceeding in forma pauperis, the Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a

claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a

curative amendment before dismissing a complaint, unless an amendment would be futile or

inequitable); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal

pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000)

(dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91

F.3d 451, 453 (3d Cir. 1996).

### III.  SECTION 1983 and <u>BIVENS</u> LIABILITY

Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 alleging violations of his

constitutional rights under the Fifth and Fourteenth Amendments.  Section 1983 provides in

relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen
> of the United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . . .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right

secured by the Constitution or laws of the United States and, second, that the alleged deprivation

was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S.

42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, plaintiff's civil rights claims against the state officials, Sheriff Jerry Speziale,

Warden Charles Meyer, Deputy Warden Bendl, Captain Vassolar, and Sgt. Condatore would fall

under § 1983.  However, plaintiff's claims against the remaining federal defendants are not

cognizable under § 1983.  The claims against these federal defendants would be governed under

<u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 389

(1971).

In <u>Bivens</u>, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment.  In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983.[2]  The Supreme Court has also implied <u>Bivens</u> damages remedies directly under the Eighth Amendment, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14 (1980), and the Fifth Amendment, <u>see</u> <u>Davis v. Passman</u>, 442 U.S. 228 (1979).  But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation."  <u>Schreiber v. Mastrogiovanni</u>, 214 F.3d 148, 152 (3d Cir. 2000) (citing <u>Schweiker v. Chilicky</u>, 487 U.S. 412 (1988)).

In order to state a claim under <u>Bivens</u>, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.  <u>See</u> <u>Mahoney v. Nat'l Org. For Women</u>, 681 F. Supp. 129, 132 (D. Conn. 1987)(citing <u>Flagg Brothers, Inc. v. Brooks</u>, 436 U.S. 149, 155-56 (1978)).

The United States has sovereign immunity except where it consents to be sued.  <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, <u>see</u> <u>FDIC v. Meyer</u>, 510 U.S.

---

[2]   <u>Bivens</u> actions are analogous to suits under § 1983 against state officials who violate federal constitutional or statutory rights.  The two bodies of law are not "precisely parallel;" however, there is a "general trend" to incorporate § 1983 law into <u>Bivens</u> suits.  <u>Egervary v. Rooney</u>, 80 F. Supp. 2d 491 (E.D. Pa. 2000)(<i>citing</i> <u>Chin v. Bowen</u>, 833 F.2d 21, 24 (2d Cir. 1987)).

471, 484-87 (1994), or against any of the individual defendants in their official capacities, see

Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her

official capacity is a suit against the government).  Plaintiff cites no authority, and the Court has

located no such authority, to suggest that the United States has waived its sovereign immunity

with respect to the sort of claim for damages that plaintiff seeks to assert against the DHS and the

BICE.  Therefore, plaintiff's Bivens' claims against the DHS and BICE must be dismissed.

### IV.  SUPERVISOR LIABILITY

Local government units and supervisors typically are not liable under § 1983 solely on a

theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8

(1985); Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 690-91

(1978)(municipal liability attaches only "when execution of a government's policy or custom,

whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

official policy, inflicts the injury" complained of).  "A defendant in a civil rights action must

have personal involvement in the alleged wrongs; liability cannot be predicated solely on the

operation of respondeat superior.  Personal involvement can be shown through allegations of

personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d

1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d

1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

A § 1983 action brought against a person in his or her official capacity "generally

represent[s] only another way of pleading an action against an entity of which an officer is an

agent."  Monell, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, . . . a governmental entity

is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus,

in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

With respect to plaintiff's claims against the federal supervisory officials at BICE, neither the Supreme Court nor the Third Circuit has addressed whether supervisors in Bivens actions may be held liable on a theory of respondeat superior.  Most courts to address the issue, however, have held that liability may not be based on respondeat superior.  See, e.g., Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000)(collecting cases); Laswell v. Brown, 683 F.2d 261, 268 & n.11 (8th Cir. 1982), cert. denied, 459 U.S. 1210 (1983) (basing its conclusion on the fact that the Supreme Court has looked to § 1983 cases in evaluating the nature of defendant officials' qualified immunity); Kite v. Kelly, 546 F.2d 334, 337-38 (10th Cir. 1976).  This Court finds persuasive the reasoning of those courts that have declined to impose respondeat superior liability in Bivens actions.

Here, however, plaintiff asserts the personal involvement, knowledge and acquiescence of the named supervisory officials, both BICE officials and Passaic County Jail officials, either through allegations of actual participation and personal direction, or of actual knowledge and acquiescence of a policy, plan or procedure.  See Rode, 845 F.2d at 1207.  Thus, his claims against these defendants are not predicated solely on the basis of supervisor liability.  Accordingly, the Court will examine the various allegations asserted by plaintiff to determine if he states cognizable claims to withstand summary dismissal.

## IV.  ANALYSIS

Plaintiff alleges the following claims: (1) denial of dental and medical care; (2) denial of access to the courts; (3) unconstitutional conditions of confinement; (4) unlawful searches; (5) denial of equal protection; (6) failure to supervise; (7) failure to protect; (8) verbal harassment; (9) conspiracy to cover up the assault on plaintiff; and (10) failure to investigate allegation that jail officials authorized the assault on plaintiff.

A.  Denial of Dental and Medical Care Claim

Plaintiff is an immigration detainee confined at the Passaic County Jail at the time of the alleged incidents.  He has since been released.  As a person detained for deportation, plaintiff's status is equivalent to a pretrial detainee, whose constitutional claims alleging denial of medical and dental care are considered under the due process clause (under the Fifth and/or Fourteenth Amendments) instead of the Eighth Amendment.  See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 243-45 (1983)(holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir. 2000); Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).  See also Edwards v. Johnson, 209 F.3d 772, 778 (5th Cir. 2000)(citing Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979)); Despaigne v. Crolew, 89 F. Supp.2d 582, 585 (E.D. Pa. 2000) and Montgomery v. Ray, 145 Fed. Appx. 738, 740, 2005 WL 1995084 (3d Cir. 2005)(unpubl.)("the proper standard for examining such claims is the standard set forth in Bell v. Wolfish, ...; i.e. whether the conditions of confinement (or here, inadequate medical treatment)

amounted to punishment prior to adjudication of guilt . . . .") (citing <u>Hubbard</u>, 399 F.3d at 158).

In <u>Hubbard</u>, the Third Circuit clarified that the Eighth Amendment standard only acts as a floor

for due process inquiries into medical and non-medical conditions of pretrial detainees.  399 F.3d

at 165-67.

Here, plaintiff alleges that he did not receive any dental care during the time that he was

detained at PCJ, even when he complained of bleeding gums and a loose tooth from an assault.

He also alleges that he did not receive any medical attention after his assault.  These allegations,

if true, suggest that the denial of treatment was excessive in relation to any stated purpose of jail

security and administration, and a court may infer that it is intended as punishment.  <u>See</u> <u>Hubbard</u>

<u>v. Taylor</u>, 399 F.3d 150, 158-63 (3d Cir. 2005); <u>Newkirk v. Sheers</u>, 834 F. Supp. 772, 781 (E.D.

Pa. 1993).  Therefore, the denial of dental and medical care claims will be allowed to proceed at

this time.

B.  <u>Access to Courts Claim</u>

Al-Shahin also claims that he has been denied access to the courts because defendants

failed to provide an adequate law library with relevant legal materials or an access code or

password to obtain statutes and forms from the computer.  Additionally, he claims that defendant

Bendl did not assist plaintiff in filing a complaint against Poljoka in municipal court.

Courts have recognized different constitutional sources for the right of access to the

courts.  Principally, the right of access derives from the First Amendment's right to petition and

the due process clauses of the Fifth and Fourteenth Amendments.[3]  The right of access to the

_____

[3]  The right of access to the courts is an aspect of the First Amendment right to petition.
<u>McDonald v. Smith</u>, 472 U.S. 479, 482 (1985); <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461
U.S. 731, 741 (1983); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme

courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  Id. at 825.  "'[T]he touchstone . . . is meaningful access to the courts.'" Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988)(*quoting* Bounds, 430 U.S. at 823)(internal quotation omitted).

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).  Similarly, a pretrial detainee has a right of access to the courts

---

Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights."  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also, Hudson v. Palmer, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v. McDonnell, 418 U.S. 539, 576 (1974).  The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

˘14˘

with respect to legal assistance and participation in one's own defense against pending criminal charges.  See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31, 2000).  But see United States v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); United States v. Walker, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint."  Lewis, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them.  . . .  This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access.  But the cost of protecting a constitutional right cannot justify its total denial."  Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis, 518 U.S. 343.

Here, plaintiff alleges that PCJ did not provide current immigration law materials in their law libraries or access to forms and statutes online.  He does not allege that he has suffered an actual injury from the alleged inadequacy of the law library.  The Court also notes that plaintiff was not precluded or prevented from filing lawsuits on his own.[4]  Thus, without allegations of an actual injury, this claim will be dismissed without prejudice.

D.  Conditions of Confinement

As noted above with respect to medical care, pretrial detainees retain at least those constitutional rights enjoyed by convicted prisoners.  This applies as well to claims regarding jail conditions.  Bell v. Wolfish, 441 U.S. at 545; Hubbard, 399 F.3d at 165-66; Natale v. Camden County Correctional Facility, 318 F.3d 575, 581-82 (3d Cir. 2003); Kost v. Kozakiewicz, 1 F.3d 176, 187-88 (3d Cir. 1993).  Analysis of whether a pre-trial detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  Fuentes, 206 F.3d at 341-42.  See also infra 19-21.

A conditions of confinement claim is a constitutional attack on the general conditions, practices, and restrictions of pretrial or other detainee confinement.  See Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997).  A constitutional violation exists if the court finds that the conditions of confinement are not reasonably related to a legitimate, non-punitive governmental objective. See Bell v. Wolfish, 441 U.S. at 538-39.

---

[4]  It is unclear why plaintiff would need assistance from the deputy warden to file a municipal court complaint against Poljoka.  He clearly had the ability to file complaints himself. Rather, it appears that plaintiff may be arguing that criminal charges should be brought against Poljoka.  However, Al-Shahin simply has no interest cognizable under 42 U.S.C. § 1983 in having Poljoka prosecuted for his alleged assault.  See Leeke v. Timmerman, 454 U.S. 83, 85-87 (1981); Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another").

Here, at this stage of the proceedings, it would appear that plaintiff's allegations are sufficient to state a claim for "punishment" in violation of the Fourteenth Amendment.  Plaintiff claims that he was denied basic hygiene products and clothing that are mandated by the detention manual to be followed by detention facilities in contract with the BICE.  He also contends that the conditions of severe overcrowding, such as sleeping and eating in close proximity to dirty toilets and urinals, vermin-infested cells, and poor ventilation, etc., are unconstitutional conditions of confinement.  As the requirements of the Eighth Amendment set a "floor" for analysis of Fourteenth Amendment due process claims, it is worth noting that denial of the "minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981), which would include basic sanitary conditions that plaintiff alleges are lacking, would be sufficient to state an actionable constitutional deprivation.  Further, these unsafe, unsanitary and inadequate conditions do not appear reasonably related to a legitimate, non-punitive governmental objective.  Therefore, this claim will be allowed to proceed as against all remaining named defendants.[5]

E.  Unlawful Search of Cell

Plaintiff claims that the use of attack dogs to search detainees' cells, the deliberate chaos caused by throwing his Holy Quran on the floor, and the attendant verbal abuse and humiliation violates his constitutional rights.  He complains that such searches are conducted to intimidate

---

[5]  The BICE officials contract with the jail facilities to house and care for immigration detainees pending their removal from the United States.  Plaintiff has alleged that these defendants had sufficient knowledge about the conditions in Passaic County Jail that conflict with the detention manual requirements to hold them liable for unconstitutional conditions of confinement.

and terrorize the detainees.  He does not allege that he, or any other detainee, had been harmed by the dogs during these routine searches.

Institutional security may necessitate the limitation of inmates' constitutional rights.  Bell v. Wolfish, 441 U.S. at 545-46.  For this reason, decisions by prison administrators regarding matters of security, discipline, and administration are accorded great deference.  Id. at 547.  Thus, when a prison regulation or practice impinges on an inmate's constitutional rights, that regulation or practice is valid if it is reasonably related to legitimate penological interests such as institutional security.  Lewis v. Casey, 518 U.S. 343, 361-62 (1996); Washington v. Harper, 494 U.S. 210, 223-24 (1990)(citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

Here, the searches at issue were conducted in the cells and did not appear to involve any physically invasive procedure.  However, plaintiff alleges that the searches were conducted without any justification, solely to torment and harass all the detainees when only one of them had committed an infraction.  Thus, he appears to be asserting that the searches were not related to genuine security and administrative concerns in a confined institution, but rather to punish the detainees.  For this reason, the Court will allow the claim to proceed at this time.

F.  Equal Protection Claim

Next, plaintiff argues a general claim that he was denied his right to equal protection under the law, as guaranteed by the Fifth and Fourteenth Amendments, as an immigration detainee.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  City of Cleburne, Texas v.

Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216

(1982); Artway v. Att'y Gen. of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).  Despite its

sweeping language, though, "[t]he Equal Protection Clause does not forbid classifications.  It

simply keeps governmental decisionmakers from treating differently persons who are in all

relevant respects alike."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

Proof of disparate impact alone, however, is not sufficient to succeed on an equal

protection claim; a plaintiff also must prove that the defendant intended to discriminate.  Vill. of

Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264-66 (1977); Washington v.

Davis, 426 U.S. 229, 242, 244-45 (1976).  Thus, discriminatory intent must be a motivating

factor in the decision, but it need not be the sole motivating factor.  Vill. of Arlington Heights,

429 U.S. at 265-66.

Under this standard, the Court finds that plaintiff has failed to articulate an equal

protection violation.  Plaintiff has not alleged that he was singled out for discriminatory treatment

different from other similarly situated prisoners.  Moreover, detainees are not members of a

suspect class.  See Hodges v. Klein, 562 F.2d 276 (3d Cir. 1977); Myrie v. Comm'r, N.J. Dept.

Of Corrections, 267 F.3d 251, 263 (3d Cir. 2001)(noting that inmates, as a class, do not

constitute a "discrete and insular" minority); Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir.),

cert. denied 533 U.S. 953 (2001).  Therefore, the Court concludes that plaintiff has failed to

demonstrate any equal protection violation and his claim will be dismissed pursuant to 28 U.S.C.

§ 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

G.  Failure to Supervise

Plaintiff also generally alleges that the named defendants failed to supervise persons working in detention facilities, in particular, PCJ, as to the proper procedures and conditions for detaining immigration detainees consistent with the BICE manual.  In general, where a plaintiff seeks to establish liability based on a supervisor's (or municipality's) failure to train or supervise adequately, the plaintiff must show that a need for more or different training or supervision is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train or supervise can fairly be said to represent official policy.  City of Canton v. Harris, 489 U.S. 378, 388-92 (1989); Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 724-26 (3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990).

> In resolving the issue of municipal or supervisory liability,
>
> the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . .  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training . . . .  Moreover, for liability to attach . . . the identified deficiency in a city's training program must be closely related to the ultimate injury.

City of Canton, 489 U.S. at 390-91.

Here, plaintiff contends that the named supervisory officials at Passaic County Jail and at BICE, bear responsibility for training and supervising those individuals responsible for the conditions and treatment of immigration detainees.  Because plaintiff's conditions of confinement claim is proceeding, plaintiff's allegations for failure to train and supervise with respect to the egregious conditions in the jails, including the denial of dental and medical care, the hostile and

unjustified searches of the plaintiff's cell, and the failure to protect plaintiff from a known risk of harm, should be sufficient to avoid dismissal at this preliminary stage of the litigation.

F.  Failure to Protect

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).  Accordingly, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners."  Farmer, 511 U.S. at 833 (1994) (internal quotations omitted).  "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'"  Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

To successfully state a claim for violation of the Eighth Amendment, an inmate must satisfy both the objective and subjective components of such a claim.  The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety.  See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety, Id. at 837.  "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror."  Riley v.

Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).  "Whether . . . prison official[s] had the requisite

knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways,

including inference from circumstantial evidence, and a fact finder may conclude that ... prison

official[s] knew of a substantial risk from the very fact that the risk was obvious."  Farmer, 511

U.S. at 842.  Deliberate indifference is more than a mere lack of ordinary due care, however; it is

a state of mind equivalent to a reckless disregard of a known risk of harm.  Farmer, 511 U.S. at

834.

    Here, plaintiff is an immigration detainee, not a prisoner, and thus, the Eighth

Amendment analysis provides the floor in determining the standard to be considered with respect

to detainees.  In this case, Al-Shahin alleges facts which show that defendants were informed of a

specific risk of harm to plaintiff from another, specific inmate, Nami, 82 F.3d at 67-68; Young,

960 F.2d at 362, and that a substantial risk of that inmate's attacks on plaintiff was known,

repetitive, and documented, or otherwise obvious to them.  Farmer, 511 U.S. at 842; accord

Hamilton v. Leavy, 117 F.3d 742, 747-48 (3d Cir. 1997); Ingalls v. Florio, 968 F. Supp. 193,

199-200 (D.N.J. 1997).[6]  In particular, inmate Poljoka was to be confined separately from

plaintiff, which status was ignored by officials.  Based on these allegations, if true, the Court will

allow this claim to proceed at this time.

---

    [6]  Where defendants merely have failed to exercise due care in failing to prevent an
assault by other prisoners, such negligence is insufficient to establish a violation of the Eighth
Amendment.  Davidson v. Cannon, 474 U.S. 344, 345-48 (1986) (finding that prison officials'
negligent failure to heed prisoner's notification of threats from another inmate, followed by an
assault, is not a deprivation of constitutional rights); see also Schwartz v. County of
Montgomery, 843 F. Supp. 962 (E.D. Pa.), aff'd, 37 F.3d 1488 (3d Cir. 1994) (stating that
corrections officers' failure to observe institutional policies regarding the supervision of
dangerous inmates constitutes negligence, which cannot support a § 1983 action for violation of
the Eighth or Fourteenth Amendments).

H.  Verbal Harassment

Generally, mere verbal harassment does not give rise to a constitutional violation.  See

McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001)(taunts and threats are not an Eighth

Amendment violation);  Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir. 1987) (vulgar

language); Rivera v. Goord, 119 F. Supp.2d 327, 342 (S.D.N.Y. 2000)(verbal harassment does

not violate inmate's constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185,

187-189 & n.3 (D.N.J. 1993)(corrections officer's use of racial slurs did not amount to

constitutional violation);; Murray v. Woodburn, 809 F. Supp. 383 (E.D. Pa. 1993); Douglas v.

Marino, 684 F. Supp. 395 (D.N.J. 1988).  See also Shabazz v. Cole, 69 F. Supp.2d 177, 200-01

(D. Mass. 1999)("without even a suggestion of physical injury, [defendants'] verbal abuse and

racial epithets, although continuing for a long period of time, fall short of conscience shocking

conduct"); Wright v. Santoro, 714 F. Supp. 665, 667 (S.D.N.Y. 1989), aff'd, 891 F.2d 278 (2d

Cir. 1989); Knop v. Johnson, 667 F. Supp. 467 (W.D. Mich. 1987), appeal dismissed, 841 F.2d

1126 (6th Cir. 1988).  Allegations that prison personnel have used threatening language and

gestures also are not cognizable claims under § 1983.  Collins v. Cundy, 603 F.2d 825 (10th Cir.

1979) (defendant laughed at prisoner and threatened to hang him).

Here, plaintiff does not allege any physical abuse in conjunction with the verbal

harassment to elevate this claim, on its own, to one of constitutional magnitude.  Consequently,

any such claim of verbal harassment will be dismissed for failure to state a cognizable claim.[7]

---

[7]  The Court notes, however, that allegations of verbal abuse are intertwined with
plaintiff's claim of unlawful searches, which claim will be allowed to proceed.

I. <u>Conspiracy and Failure to Investigate Assault on Plaintiff</u>

Plaintiff next alleges that defendants have failed to investigate his allegation that jail officials, namely, Sgt. Condatore, knew of or urged another inmate to attack plaintiff.  He also alleges that defendants, namely, Captain Vassolar, Sgt. Condatore, and two BICE representatives, conspired to frustrate and impede plaintiff's charges that defendants failed to protect plaintiff from harm.  Because these claims are intertwined with plaintiff's "failure to protect" claim, the Court likewise is inclined to allow these claims of failure to investigate and conspiracy, as alleged, to proceed at this time.

J. <u>Retaliation</u>

Although Al-Shahin does not expressly allege a claim of retaliation in violation of his First Amendment rights, he alleges facts that would tend to support such a claim.  Namely, plaintiff alleges that his visitation rights were strictly limited to five minutes instead of the usual one-hour visitation allowed, his Holy Quran was violated during a cell search, and he was inexplicably taken off the list for Halal meals, after he complained of the many grievances set forth above.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution . . . ."  <u>White v. Napoleon</u>, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001) (quoting <u>Allah v.</u>

Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  See also Anderson v. Davila, 125 F.3d 148, 160

(3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977));

Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229

F.3d at 225.

 Based on the allegations set forth in the complaint, if true, plaintiff may be able to support

a claim of retaliation by defendants against him for complaining about the conditions at PCJ and

the defendants' failure to protect him from harm.  Accordingly, this claim will be allowed to

proceed at this early stage.

K. Plaintiff's Motion for Appointment of Counsel

 On January 9, 2007, Al-Shahin filed a motion for appointment of counsel.  Indigent

persons raising civil rights claims have no absolute constitutional right to counsel.  Parham v.

Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).  In determining whether to appoint counsel, a

court should consider several factors:

> As a preliminary matter, the plaintiff's claim must have some merit in fact and
> law. . . . If the district court determines that the plaintiff's claim has some merit,
> then the district court should consider the following factors:
>
> > (1) the plaintiff's ability to present his or her own case;
> > (2) the complexity of the legal issues;
> > (3) the degree to which factual investigation will be necessary and the
> > ability of the plaintiff to pursue such investigation;
> > (4) the amount a case is likely to turn on credibility determinations;
> > (5) whether the case will require the testimony of expert witnesses;
> > (6) whether the plaintiff can attain and afford counsel on his own behalf.
>
> [Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir. 1993), cert. denied, 510
> U.S. 1196 (1994).]  This list of factors is not exhaustive, but instead should serve
> as a guide post for the district courts.

> Correspondingly, courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases.  <u>Id.</u> at 157.

<u>Parham</u>, 126 F.3d at 457-58.

Applying these factors to this case, the Court concludes that it is not sufficiently advised of plaintiff's present circumstances to make a practical decision on appointing counsel to represent him in this lawsuit.  As can be seen, a variety of claims have been preserved.  While the issues are not complex, investigation may be. The Court's decision to impose on a working lawyer the significant obligations of <u>pro bono</u> representation is not undertaken lightly.  The Court directs that plaintiff file an affidavit within twenty (20) days indicating if he continues to desire appointed counsel, setting forth his updated financial circumstances and his availability to meet with and cooperate with counsel.  On receipt, the Court will determine this issue.

## V.  CONCLUSION

For the reasons stated above, the Court will dismiss the complaint in its entirety as against the defendants the United States Department of Homeland Security and the Bureau of Immigration and Customs Enforcement, for failure to state a claim. As to the remaining defendants, the Court will dismiss without prejudice plaintiff's claims alleging denial of access to the courts.  The claims alleging mere verbal harassment and denial of equal protection will be dismissed with prejudice for failure to state a claim of constitutional magnitude.  However, the remaining claims alleging unconstitutional conditions of confinement, denial of dental and medical care, unconstitutional cell searches, failure to train and supervise, failure to protect, and retaliation will be allowed to proceed at this time.  An appropriate order will be entered.

/s/   Katharine S. Hayden
KATHARINE S. HAYDEN
United States District Judge

DATED:  October 3, 2007